Anderson & Co. *v.* Ingram.

R. H. ANDERSON & CO. *v.* THOMAS and JOHN INGRAM.

REGISTRATION. Where at sheriff's sale of land under execution the plaintiff in execution purchased, and the defendant in execution procured G to redeem the land or to purchase it and give him longer time to redeem, and after the time for redemption had expired, the sheriff and the defendant in execution made deed to G, and G voluntarily executed an instrument agreeing to convey the land to defendant in execution whenever he should pay G what he owed him. *Held*, that said promise or agreement was not such contract for sale of land as vested title or required registration.

FROM MADISON.

Appeal from the Chancery Court at Jackson. T. C. MUSE, J.

McCORRY & BOND for complainants.

R. W. HAYNES for defendants.

DEADERICK, C. J., delivered the opinion of the court.

The bill was filed March 7, 1882, by complainants, as judgment creditors of defendant, John Ingram, with a return of *nulla bona* on execution issued. They seek to subject certain personalty conveyed in trust, January, 1877, to Thomas by John Ingram, and to hold Thomas liable for waste and mismanagement of the property conveyed in trust. They also allege that John is the owner of an undivided one-fourth interest in a tract of 2,600 acres of land situate in Madison county, and described in the bill, and complainants seek to subject this interest to the satisfaction of the judgment.

The chancellor, upon answer of defendants, depositions and documentary evidence introduced, dismissed the bill so far as relief was sought against Thomas Ingram, and ordered an account as against John, and complainants have appealed. The referees have recommended an affirmance of the chancellor's decree, and complainants have filed numerous exceptions, raising again the questions maintained in their bill.

Soon after the execution of the trust deed by John, Holland and Wilbon obtained a judgment against John for $450, and his interest in said land was sold for its satisfaction in May, 1877, and the land was bid in by the creditors at the amount of the judgment and costs.

In the meantime no steps were taken by Thomas, as trustee, nor by any of the beneficiaries in the trust deed for the sale of any of the property conveyed

therein. It consisted of mules, hogs, horses, corn, and cotton of the product of the year • 1876. The deed provided that if the debts therein secured were paid by January 1, 1878, it should be void, otherwise it should remain in full force. But it contained no authority to the trustee to take the property into his possession, nor to sell the same, and we think, as the chancellor and the Referees have found, that the trustee named therein, absolutely refused to have any thing to do with the execution of said trust. The result was that nearly all the property therein conveyed, was wasted or had died, or been disposed of before any of the beneficiaries took any steps to have it applied to the purposes of the trust.

The complainants, as far as appears, were the first to make any effort to this end, and their bill was filed more than five years after the execution of the deed of trust. Thomas was a large creditor of his brother, John, and was one of the beneficiaries in the deed. After the purchase of the land by Holland and Wilbon, and a few months before the expiration of the time of redemption, John Ingram procured John A. Greer to redeem the land, or to purchase it of Holland and Wilbon, and give him some longer time to redeem. Holland and Wilbon executed a deed, or assignment of their bid and interest in the land to Greer, acknowledging the receipt from him of the amount of their debt, and directed the sheriff to make the deed to him.

This deed was executed to Greer by the sheriff on December 5, 1881, more than eighteen months after

the time of redemption had expired, and the said John Ingram united in this sheriff's deed to Greer, conveying his interest in the land, and acknowledging that he had failed to redeem said land within the time allowed by law or otherwise, and in consequence of such failure to redeem, the title of said Greer has become absolute.

Two days after the execution of this deed Greer voluntarily executed an instrument, in which it is recited, that he has a deed for John Ingram's land, and that he, Ingram, is indebted to him in the sum of $1,053.83, and agrees to convey to him said land whenever he pays him, Greer, or causes to be paid to him, said sum. This instrument is dated December, 7, 1881.

On March 2, 1882, Greer, at the instance of said John Ingram, conveyed to Thomas Ingram the said land, for the consideration of the payment by said Thomas by John's indebtedness to Greer, and for the further consideration of the surrender by Thomas to John of about $2,400 of notes due from John to Thomas. The said John at that time also surrendering to Greer the agreement he had signed allowing him the privilege to repurchase the land, and a quit-claim deed, as it is styled, was also prepared and signed of John to Thomas. The deed of Greer to Thomas was registered the same day it was executed, but the quit-claim deed from John to Thomas was not registered until March 8, 1882, the day after the filing of complainant's bill.

Unquestionably Greer had the title to the land free

from any equity or claim of John Ingram after he had united with the sheriff in the conveyance to him. His promise or agreement to reconvey upon receiving so much money, was made after the right of redemption had expired. It created in John no interest in the land, but merely gave him the privilege of repurchasing, by the voluntary act of Greer, so that it was not such a contract for the sale of the land as vested any title, or required registration. But it might be abandoned or changed by the parol agreement of the parties. It was so abandoned, and with the assent of John, and for a valuable consideration to him, the title was conveyed to Thomas. Thomas paid Greer $1,178, the amount of John's indebtedness to him, for which the land had become liable, and also surrendered to John evidences of indebtedness against him, amounting to more than $2,400. These debts against John are shown to have been valid, and the land is shown not to have been worth more than $3,000, and all the circumstances indicate that all these transactions were in good faith and free from fraud.

We are of opinion, therefore, that the exceptions to the report of the Referees are not well taken, and should be set aside, and the chancellor's decree affirmed and the cause remanded for account and further proceedings, and complainants will pay the costs of this court.